IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW W. HOWSER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHELLE KING,[1] )<br>*Acting Commissioner of Social Security,* )<br>)<br>Defendant. ) | Civil Action No. 24-9 |

O R D E R

AND NOW, this 14th day of February, 2025, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse,

---

[1] Michelle King is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).  The Clerk is directed to amend the docket to reflect this change.

1

merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[2]

---

[2]    Plaintiff contends that the Administrative Law Judge ("ALJ") improperly analyzed the opinions of Dr. Gregory Hogan, D.C.  (Doc. No. 8).  Further, Plaintiff argues the ALJ's residual functional capacity ("RFC") finding is flawed because it failed to consider his lumbar degenerative disc disease, lumbar spinal stenosis, and his non-severe impairments.  (*Id.*).  Plaintiff also asserts that his activities of daily living do not support a finding that he could work on a full time and sustained basis.  (*Id.*).  After a thorough review of the record, the Court disagrees with Plaintiff and finds that substantial evidence supports the ALJ's decision.

> After assessing all the evidence, the ALJ found Plaintiff had the following RFC:
>
> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the work must: be limited to occasional climbing of stairs and ramps; entail no climbing of ropes, ladders, and scaffolds; be limited to occasional balancing; be limited to occasional stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme cold, humidity, vibration, and irritants such as concentrated fumes, odors, dust, gases, or poor ventilation; avoid all exposure to hazards such as heavy, dangerous machinery and unprotected heights; and allow to alternate between sitting and standing positions for up to two minutes at 30-minute intervals without going off-task and without leaving the workplace.

(R. 22).  This RFC logically followed from the ALJ's analysis of medical source opinions. Among these opinions were two submitted by Dr. Hogan.  The first was a physical medical source statement form dated March 23, 2022.  (Ex. 10F).  This was a check box form opining that Plaintiff was very limited, including that he could sit and stand/walk less than two hours in a workday; never stoop, crouch/squat, or climb ladders; and would be absent from work more than four days per-month.  (*Id.*).  The second opinion consisted of a May 27, 2022 physician's medical report.  (Ex. 13F/5).  In this report, Dr. Hogan submitted several narrative statements and opined, in relevant part, that Plaintiff was unable to perform prolonged sitting, standing, kneeling, crouching, twisting, reaching, and climbing.  (*Id.*; R. 26).  The ALJ analyzed both of these opinions and found the first not to be persuasive because it was not consistent with other opinions in the record and not supported, as Dr. Hogan did not provide any explanation for the assessed check box limitations.  (R. 25-26).  However, the ALJ found Dr. Hogan's second opinion to be persuasive because it was consistent with treatment records and supported by Dr. Hogan's treating history.  (R. 26).

Plaintiff contends that the ALJ erred in finding that Dr. Hogan's first opinion was not supported, as there were portions of the check box form that contained narrative statements in support of his findings. (Doc. No. 8 at 15). Plaintiff also asserts that the ALJ erred in finding Dr. Hogan's second opinion persuasive, but not adopting the postural limitations opined by Dr. Hogan. (*Id.* at 18). The Court rejects both of Plaintiff's arguments regarding the ALJ's analysis of Dr. Hogan's opinions.

First, as to the narrative statements on Dr. Hogan's check box form, the Court notes that the ALJ did not err in finding these statements did not support Dr. Hogan's opinion. Indeed, these statements did not convey support for Dr. Hogan's opined limitations, as they contained only information related to Plaintiff's conditions, including his diagnoses, prognosis, symptoms, nature of pain, clinical and objective signs, and frequency and length of contact with the patient. (Ex. 10F). These statements did not support Dr. Hogan's opinion as they did not specifically relate to the extent to which he articulated support for his own opinion. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (stating "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion").

Second, as to Dr. Hogan's report, while the ALJ found these opined limitations persuasive he was under no obligation to incorporate all of them into Plaintiff's RFC. *See Wilkinson v. Commissioner Social Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citations omitted) (explaining that "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight[.]"). Indeed, instead of adopting Dr. Hogan's opined postural limitations, the ALJ adopted the persuasive postural limitations opined by the state agency consultants and limited Plaintiff to occasional climbing of ramps and stairs; no climbing of ropes, ladders, and scaffolds; and occasional stooping, kneeling, crouching, and crawling. (R. 22, 26, Exs. 2A/5, 4A/5). While the state agency consultants opined that Plaintiff be limited to frequent balancing, (Exs. 2A/5, 4A/5), the ALJ explained that he instead reduced Plaintiff's RFC to include occasional balancing to afford Plaintiff the "utmost benefit of the doubt[.]" (R. 26). These adopted postural limitations did not conflict with Dr. Hogan's opined persuasive postural limitations, which limited Plaintiff to no prolonged kneeling, crouching, twisting, reaching, and climbing. (R. 26, Ex. 13F/5). Moreover, the ALJ accounted for Dr. Hogan's opined limitations of no prolonged sitting and standing by limiting Plaintiff to alternating between sitting and standing positions for up to two minutes at 30-minute intervals, consistent with these opined persuasive limitations. (R. 22). Accordingly, because the RFC's postural limitations logically flowed from the ALJ's analysis of the medical opinions, including Dr. Hogan's, the Court finds Plaintiff's arguments as to the analysis of Dr. Hogan's opinions are without merit.

3

Likewise, the Court rejects Plaintiff's argument that the ALJ erred in crafting his RFC. (Doc. No. 8 at 15-18). The Court views Plaintiff's argument that the RFC failed to account for all of his impairments as a request to reweigh the evidence. Plaintiff contends that the ALJ's RFC finding did not incorporate his ongoing left low back pain that impairs his ability to sustain any kind of work. (*Id.* at 17-18). Here, Plaintiff alleged disability resulting from back problems, lumbar/spinal stenosis, degenerative discs in the neck, noncancerous tumor on the spinal cord, diabetes, neuropathy, and high blood pressure. (R. 22; Ex. 3E/2). Plaintiff asserts that he could, at most, function at a sedentary level of employment and would require breaks to adjust his posture and manage his pain. (*Id.* at 18). At his hearing, Plaintiff's representative asserted that he had the severe impairments of herniated disc in lumbar, spinal stenosis, diabetic neuropathy, sleep apnea, and vertigo. (R. 23, 40). At Step Two, the ALJ assessed that Plaintiff had the severe impairments of morbid obesity, lumbar spinal stenosis, degenerative disc disease of the lumbar spine, status-post surgical discectomy, type II diabetes mellitus with diabetic polyneuropathy, and allergic rhinitis. (R. 19-20). In assessing all the evidence, the ALJ took into consideration Plaintiff's lower left back pain and noted Plaintiff's visits to the emergency room and examinations following complaints of lower back pain. (R. 23). After about a month of these symptoms, as the ALJ explained, Plaintiff underwent a lumbar decompression and reported the surgery had "helped him considerably[.]" (R. 24). Since the surgery, Plaintiff continued with conservative treatment and his diagnostic imaging was generally unremarkable. (*Id.*). The ALJ noted that the longitudinal record showed that Plaintiff had ongoing spinal pain and the ALJ afforded Plaintiff the "utmost benefit of the doubt" and restricted him to light work with additional postural and environmental limitations and a sit/stand option. (R. 24-26). This analysis reflects that the ALJ considered Plaintiff's back pain, and Plaintiff fails to point to any relevant evidence within the record that the ALJ did not consider. Accordingly, Plaintiff's argument on this point fails.

Similarly, the Court finds no merit in Plaintiff's argument that his activities of daily living cited by the ALJ do not support a finding that he could work on a full time and sustained basis. (Doc. No. 8 at 18-19). Plaintiff argues that his activities of daily living were sporadic and transitory and that the ALJ erred in stating that these activities were inconsistent with those of a totally disabled individual. (*Id.*). In this matter, the ALJ stated the following about these activities:

> With regards to activities of daily living, the claimant reported watching television, going to his parents' house, and taking care of his own personal care. He reported needing no reminders to take care of his personal needs or grooming or to take medications. The claimant reported preparing simple meals, doing laundry, and doing dishes. The claimant reported being able to drive and go out alone. He reported being able to shop, pay bills, count change, handle a savings account, and use a checkbook/money orders. The claimant reported spending time with others, in person, on the

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 7) is DENIED and that Defendant's Motion for Summary Judgment (Doc. Nos. 10, 12) is GRANTED.

s/Mark R. Hornak, J.
United States District Judge

ecf:        Counsel of record

---

> phone, and texting. He reported going out to dinner with his wife and friends, going to Wednesday night Bible study, and church. He reported going to Bible study and church every week. Exhibit 7E. The claimant testified that he drives daily to his parents, a half mile away. He testified that his father is disabled, and he will feed him and give him his medication. While the claimant alleged difficulties with some activities, his activities of daily living do not preclude the limitations set forth in the above residual functional capacity. The undersigned notes that the claimant's self-described activities of daily living are not consistent with a totally disabled individual.

(R. 25).

The Court rejects Plaintiff's arguments regarding his activities of daily living. While Plaintiff is correct that an ALJ may not base a finding of non-disability on sporadic and transitory activities, such as a trip to Europe, none of Plaintiff's activities here are sporadic or transitory. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 n.5 (3d Cir. 2001) (holding the claimant's trip to Europe was a sporadic daily activity that could not be used to show an ability to engage in substantial gainful activity); *McBee v. Colvin*, No. 15-263-J, 2017 WL 1101884, at *1 n.1 (W.D. Pa. Mar. 23, 2017) (stating that daily activities such as caring for personal needs, managing personal finances, watching television, going outside, preparing simple meals, and reading were not sporadic or transitory in nature). As such, the ALJ was correct in stating that these activities were not consistent with those of a totally disabled individual, and these findings were supported by substantial evidence.

All told, the ALJ's findings and conclusions are supported by substantial evidence. Therefore, the Court affirms the findings of the Commissioner.